## Stephen M. Weld *vs.* Nehemiah D. Williams.

A testator made the following devise: I give unto my wife M. and to my youngest son N., her only child, all that part of my real estate (described;) provided always, that if M. shall survive N., and N. die without issue, then I give said lands to M. for her life, and after her decease to my children, S., A., M. and C., and their heirs forever, in equal portions; provided always, that if my son N. shall survive my wife M., I give said lands to said N. and to the heirs of his body, and if he or they die without issue, then I give said lands to my children, S., A., M. and C., and to their heirs forever, in equal portions; provided always, that if my wife M. shall die before me, then I give said lands to my said son N. and to the heirs of his body; provided always, that if my son N. shall die before me, without issue of his body, then I give said lands to my wife M. for her sole use during her life, and after her decease I give the same to my children, S., A., M. and C., and to their heirs forever, in equal portions; provided always, that if my son N. die before me, leaving heirs of his body, then I give said lands to his said heirs, in the same manner, and on the like terms and conditions, as I have now given the same to my son N., either jointly with his mother, or to his own use, as events may prove; my meaning and intention being to give said lands to my said wife and my said son N., for their lives, and to the survivor of them, then to the children of said N., and in default of issue, then to my children, S., A., M. and C., and to their right heirs forever. If my said son N. should, at any time after my death and the death of his mother, be desirous of disposing of his interest in the lands devised to him in manner as aforesaid, my will is, that he should first offer the same to my eldest son, and if he refuse to purchase the same, then to my next son, and so on in succession; and if they all refuse to purchase the same, then he is at liberty to sell his interest in the same to whomsoever he may see fit.

The testator's wife M. and his son N. survived him, and N. survived M.: When the testator's will was made, N. was unmarried; but at the time of the testator's death, N. was married and had children, who were living at the time when he made the deed hereinafter mentioned: After M.'s death, N. offered the lands, devised as above stated, to the testator's elder sons, in succession, according to the testator's will, and they all declined to purchase the same: N. afterwards conveyed said lands to W., in fee simple, by a deed of warranty, in common form, with the usual covenants; and W. brought an action of covenant broken against N. *Held,* that the will gave N. an estate tail, and that he had authority, by the Rev. Sts. *c.* 59, § 3, to bar the entail by his deed to W., and that W. could not maintain the action.

This was an action of covenant broken. The plaintiff's declaration averred that the defendant granted and conveyed to the plaintiff certain lands in Roxbury, and covenanted that the defendant was lawfully seized thereof in fee simple, and had a good right to sell and convey the same to the plaintiff, his heirs and assigns. The breach alleged was, that the defendant was not lawfully seized, in fee simple, of said lands, and that he had no right to sell and convey the same to the

plaintiff, his heirs and assigns. The defendant's plea averred that he was lawfully seized in fee, and had right to convey, &c.

The case was submitted to the court upon the following agreed statement of facts:

Joseph Williams, the father of the defendant, died, in the early part of the year 1822, seized of the premises described in the plaintiff's declaration. By his last will, dated March 21st 1814, (and ratified by sundry codicils, the last of which was dated December 16th 1818,) and proved before the judge of probate for the county of Norfolk, on the 4th day of June 1822, he devised the same premises, in the following clauses:

"Third. I give unto my beloved wife, Mary Williams, and unto my youngest son, Nehemiah D. Williams, who is her only child, all that part of my real estate which lies westerly of the Norfolk and Bristol Turnpike Road, and westerly of the run, commonly called Stony River, with the tenements, barns and out-houses thereon being; provided always, that if my dear wife shall survive my said son Nehemiah D. Williams, and he die without issue, then I give the said described lands and tenements to my said wife, and to be enjoyed by her for and during the term of her natural life; and after her decease I give the same to my children, Susan Williams, Amos A. Williams, George Williams, Martha Williams, Cumberland D. Williams and Nathaniel Williams, and to their heirs forever, in equal portions, share and share alike. Provided always, that if my said son Nehemiah D. Williams shall survive my dear wife, then I give my said son Nehemiah all the said described lands and tenements, and to the heirs of his body lawfully begotten; and if he or they die without issue lawfully begotten, then I give the same to my children Susan, Amos A., George, Martha, Cumberland D. and Nathaniel, and to their heirs forever, in equal portions, share and share alike. Provided always, that if my dear wife depart this life before me, then I give the same described lands and tenements to my said son Nehemiah, and to the heirs of his body lawfully begotten. Provided always, that if my son Nehemiah should depart this life before me, without issue of

his body lawfully begotten, then I give the said described lands and tenements to my dear wife, for her sole use, for and during her natural life, and after her decease I give the same to my children, Susan, Amos A., George, Martha, Cumberland D. and Nathaniel, and to their heirs forever, in equal portions, share and share alike. Provided always, that if my son Nehemiah die before me, leaving heirs of his body lawfully begotten, then I give to his said heirs said lands and tenements in the same manner, and on the like terms and conditions, in all respects whatever, as I have now given the same to my said son Nehemiah, either jointly with his mother, or to his own use, as events may prove; my meaning and intention being, to give said described lands and tenements to my said wife and my said son Nehemiah, for their lives, and to the survivor of them; then to the children of said Nehemiah, lawfully begotten; and in default of issue, then to my child en aforesaid, to wit, Susan, George, Amos A., Cumberland D., Martha and Nathaniel, and to their right heirs forever.

"Seventhly. If my said son Nehemiah should, at any time after my death and the death of his mother, be desirous of disposing of his interest in the lands and tenements herein devised to him in manner as aforesaid, my will is, that he should first offer the same to my eldest son, and if he refuse to purchase the same, then to my next son, and so on, in succession; and if they all refuse to purchase the same, then he is at liberty to sell his interest in the same to whomsoever he may see fit; and as a fair mode of estimating the value thereof, in case said Nehemiah wishes to sell the same, and either of my sons desires to purchase the same, or any part thereof, I recommend that three disinterested persons be appointed by the judge of probate for the county of Norfolk, to ascertain the value thereof."

Nehemiah D. Williams, mentioned in the above extracts from said will, is the defendant. His mother survived the testator, and died. At the date of said will, said Nehemiah was unmarried; but, at the time of the testator's death, said

Nehemiah was married and had two children, who, with two others since born, are now living.

The estates devised have been successively offered to the sons of the testator, by said Nehemiah, and they declined to purchase the same.

On the 20th day of May 1847, the defendant, by deed of that date, duly executed and acknowledged, undertook to convey to the plaintiff, in fee simple, the premises described in the writ, for thirty thousand dollars. The deed was a common deed of warranty, containing covenants that the said Nehemiah was lawfully seized in fee simple of the afore-granted premises, and that he had good right to sell and convey the same to the said Stephen M. Weld, his heirs and assigns, as aforesaid.

On these facts, the parties agreed that if said deed vested in the plaintiff an estate in fee simple, then a nonsuit should be entered ; otherwise, that judgment should be for the plaintiff.

*W. Minot, Jr.* for the plaintiff.

*D. A. Simmons*, for the defendant.

SHAW, C. J. This is an action of covenant, in which the plaintiff sets forth a conveyance made to him by the defendant, by warranty deed, in which the defendant covenanted that he was seized in fee of the granted premises, that he had good right and lawful authority so to convey the same in fee ; with general warranty. It was agreed that if the deed of the defendant was sufficient to convey a good estate in fee to the purchaser, the plaintiff should become nonsuit. This agreement avoids the question whether, if the defendant himself was seized as tenant in tail, although by force of *St.* 1791, *c.* 60, his deed would vest a good estate in fee in the purchaser, his covenant that he was in fact *seized in fee* would not be nominally broken.

The question arises upon the will of Joseph Williams, the father of the defendant, all the material clauses of which are set forth in the agreed statement of facts.

It appears that the testator had been previously married ;

that at the time of making his will, and at his decease, he had six children of his former marriage surviving, to wit, Susan, Amos, George, Martha, Cumberland and Nathaniel. He had also a second wife then living, and by her one son, Nehemiah D. Williams, the defendant. He made his will in 1814, which was confirmed by several codicils, the last of which was executed in 1818. He died in 1822, and his will, was duly proved in June 1822.

We will refer to some of the most important parts of this will.

He gives to his wife, Mary Williams, and his youngest son, her only child, Nehemiah, the premises in question ; provided always, that if his wife shall survive said son, Nehemiah, and he die without issue, then the premises shall go to his wife for life, remainder to the six elder children named, in fee, as tenants in common. The first proviso was, that if his son Nehemiah survive the wife, then the premises should go to him and the heirs of his body lawfully begotten, remainder to the six elder children in fee. The second proviso was, that if the wife should die before the testator, then the premises should go to his son Nehemiah and the heirs of his body. The third proviso was, that if his son Nehemiah should die in the life time of the testator, and leave no issue, then the premises should go to the wife for life, remainder to the six elder children in fee. The fourth proviso was, that if his son Nehemiah die before the testator, leaving heirs of his body, then the premises should go to his said heirs, in the same manner as to his said son Nehemiah, either jointly with his mother, or to his own use, as events might prove. "*My meaning and intention* being, to give said described lands and tenements to my said wife, and my said son, Nehemiah, for their lives, and the survivor of them ; then to the children of said Nehemiah, lawfully begotten ; and in default of issue, then to my children aforesaid," viz. the six elder children.

Another clause in the will provides that if Nehemiah, having survived his father and mother, should be desirous of disposing of his interest in the premises, he should first offer

it to his brothers, and if they should refuse to purchase it, then he should be at liberty to sell his interest to whomsoever he might see fit.

The wife survived the testator, and is now dead ; the son is still living, and is the defendant. Could he convey an estate in fee?

Under the first clause of this will, it seems to us clear, that the wife and son would take the estate in moieties, as tenants in common. They would be tenants in common, and not joint tenants, because they would not take estates of equal duration, and because the Rev. Sts. c. 59, § 10, make grants and devises to two or more tenancies in common, unless the intent to create a joint tenancy manifestly appears. Here the contrary manifestly appears, because there are gifts over, which are inconsistent with a mutual right of survivorship. The effect of this first devise would be to give one moiety to the wife for life, remainder to the son in tail, and the other moiety directly to the son in tail. As to this moiety, Nehemiah took an immediate estate tail in possession, which he could forthwith bar, by his deed, whether he should ever have issue or not. Had he died in the life time of his mother, without barring the entail, and without issue, then, by the devise over, the mother would have taken an estate for life, with remainder in fee to the elder children. But he did survive his mother, and remained tenant in tail of this moiety, until he executed the deed to the plaintiff.

As to the other moiety, by the first proviso, it was a devise of the same to the mother for life, remainder to Nehemiah in tail, remainder to the elder children in fee. After the death of his mother, therefore, Nehemiah was tenant in tail in possession, and by force of St. 1791, c. 60, § 1, had power to bar the entail by his deed in fee.

The second proviso looked to a contingency which did not happen, viz. the death of the wife in the life time of the testator. If it had happened, then the whole was given to the son, and the heirs of his body, and he still would have had an estate tail.

The third proviso also looked to a contingency which did not happen, viz. that of the son's dying without issue, in the life time of his mother. Then the whole estate was given to the wife for life, remainder to the elder children in fee.

The fourth proviso looked to the contingency of the son's dying in the life time of the testator, having issue. In that event, the testator gives to them, that is, to the son's heirs in tail, to be held " in the same manner and on the like terms and conditions," as he had given to him, to hold " either jointly with his mother," that is, in common during both their lives, " or to his own use, as events may prove ; " meaning, as we understand it, as the mother may outlive the testator or otherwise, and so long as she may live. The effect of this would be, had the contingency happened, and had the son died in the life time of the testator, leaving issue, that the heirs of his body would take as purchasers, to hold, as tenants in tail, one moiety during the life of their grandmother, and the whole after her decease ; or, in case she had also died in the life time of the testator, then to take the whole as purchasers, under that deliquation.

Perhaps this last proviso did no more than declare, by the express terms of the will, what the statute would have effected with ut it. By the Rev. Sts. c. 62, § 24, following substantially St. 1783, c. 24, § 8, it is provided, that when a devise of real or personal estate is made to any child or other relative, and the devisee shall die before the testator, leaving issue who survive the testator, such issue shall take the estate, so devised, in the same manner as the devisee would have done, if he had survived the testator.

Thus far the will seems to be clear ; giving the son Nehemiah an estate tail in possession in one moiety, and an estate tail in remainder in the other moiety, which became an estate tail in possession at the decease of his mother. And so it must stand, unless these provisions are modified, varied or controlled by the subsequent clause in the will, beginning at the words, " my meaning and intention being," &c.

That clause, not beginning a new sentence, but in form

following as a part of the next preceding, is as follows: "My meaning and intention being, to give said described lands and tenements to my said wife and my said son Nehemiah, for their lives, and to the survivor of them; then to the children of said Nehemiah, lawfully begotten; and in default of issue, then to my children aforesaid, to wit, Susan," and the other children of his former marriage, before named.

The first remark on this clause is, that it might be construed as qualifying the last proviso, and not the whole will. But it would not be safe to adopt this construction, unless it is quite clear that it is the true one; because, in general, every clause and article in a will may be resorted to, to ascertain the true intent and meaning of the testator in every other provision or clause.

Supposing that this clause is intended to extend back and qualify the whole will, how is it to be construed? Does it reduce Nehemiah's interest to an estate for life? When a devise is made in words clear and distinct, having a settled and definite, as well as a technical meaning, and afterwards words like those in the present clause are inserted, "meaning," &c., if they are directly repugnant and irreconcilable, it would be a question of great difficulty to decide which shall prevail and which shall yield. It would require a careful examination and study of every part of the will, to ascertain, if possible, the leading object and purpose of the testator, and with the aid of established rules of exposition, and as nearly as the rules of law will admit, give such a construction as will best carry into effect such leading object and purpose of the will, and such as will do the least violence to any part of it. But the first object, in expounding such a will, is to consider whether there be such an irreconcilable repugnancy in its different provisions; and, in taking them together, to adopt such construction as will give effect to both. We think the clause in this will, so apparently repugnant, may be reconciled.

The leading rule in the exposition of wills is, that the intent of the testator, when discovered, shall govern. But

this is to be taken with one well known exception, as well established as the rule itself; which is, that such intention can be carried into effect without violation of any of the rules of law. If repugnant to such rules, the intent must yield.

No rule of law is better established than this; that an estate tail may be barred by the tenant in tail. Indeed, without this essential incident, entails would be made perpetual, and thereby become intolerable. No rule of the common law has been more steadily adhered to and enforced, in England, than this. It is an essential and inseparable quality of an estate tail, that it may be barred by a common recovery. Our own law has fully adopted this policy, in its whole extent, and carried it further, by providing, (Rev. Sts. c. 59, § 3, following *St.* 1791, c. 60, § 1,) that entails may be barred by a deed of conveyance in fee, by the tenant in tail, and (by Rev. Sts. c. 60, § 29) that estates in tail may be taken to satisfy the debts of tenants in tail, during their lives, and after their decease. This is as firmly established as the rule that no intention of the testator, however strongly expressed, can render an estate, devised in fee, inalienable, or in any way restrain its alienation by the devisee.

Such being the obvious and settled rule of law, it follows clearly that although a testator may create and devise an estate tail, he cannot, by any intention, however clearly expressed, deprive such estate of its essential incident of being liable to be barred by the simple conveyance in fee of the tenant in tail, and of being liable for the payment of his debts.

With these views, we are to construe the clause in question, and learn what the meaning of the testator was. The first meaning expressed is, that the land is given to his wife and son, for their lives, and to the survivor. If this clause stood alone, it might be an appropriate one to create a joint tenancy; but we have before seen that the original devise, for reasons already stated, was of an estate to them as tenants in common, and not in joint tenancy. The effect of this clause therefore is, that in certain contingencies the survivor might have

the whole; the one as tenant for life, strictly, the other as tenant in tail, being an estate for life, and something more. This may be carried into effect by construing it a life estate to the wife, and an estate tail to the son, of one moiety during the life of the mother. The mother had her estate only for life; one moiety duing the life of the son, and the othei if she survived him. Now, although the son had a moiety, during the life of the mother, as tenant in tail, yet he might not bar it in his life time, and might die without issue, and then, by the gift over, the mother would have the other moiety, as survivor.

It may perhaps be urged, in answer to this, that the testator intended that the wife should actually have the whole, if she survived the son, which intent might be defeated, if it were construed an estate tail; because, in that event, he might bar it, or it might be taken for his debts, in his life time, and still he might die before his mother, and so the intent of the testator would be defeated. But we think the answer is, that this would be an intent contrary to the rules of law; to wit, to create an estate tail not liable to be barred or taken for debts; and is an intent which cannot be carried into effect. In this clause, the testator does not manifest any purpose to give his wife and son an estate in joint tenancy during their lives, with absolute right of survivorship; nor does he manifest any purpose not to give his son an estate tail, as he had previously done in the former part of his will; though he may have mistaken the legal effect and operation of a gift in tail, by supposing it inalienable by the first taker, and which must necessarily go to the children. Still there is no change of the purpose to give his son an estate tail.

The next meaning disclosed in this clause is, that after the lives of the wife and son have terminated, the estate shall go to the children of his son. This is not defeated by construing the estate to the son an estate tail. Should the son die in the life time of the mother, not having barred the entail in his moiety, it would vest in the mother, by the devise over, for her life, remainder to the children of Nehemiah, to take as

purchasers. But should the son survive the mother, then the son would take an estate tail in the whole; and should he die without barring the entail, the children would take *per formam doni*. And the same remark may be made as before, that if it was the intention of the testator that the children should certainly take, it was in effect an intention that the father should not bar the entail; an intention which could not be carried into effect, because it would be contrary to the rules of law. It was clearly his intention that they should take as special heirs of their father, that is, as heirs in tail; and then any intention to prevent the father, as devisee in tail, from barring the entail, so that the estate should not come to the issue in tail, would be void. It would be still true that the father would be tenant in tail, and then, by the statute, his deed barred the entail.

The third purpose manifested in this clause is, that after the decease of the wife and son, the latter without issue, the estate should go to Susan and others, the elder children. This, too, would be carried into effect consistently with construing the will so as to give an estate tail to Nehemiah. If the wife had died, and then the son had died without issue, not having barred the entail, or suffered the estate to be taken for his debts, then it would have passed to Susan and the other elder children, as tenants in fee, in remainder, by force of the will.

If this clause stood alone, it would be more difficult to put a satisfactory construction upon it. But it does not stand alone. It purports to explain and illustrate what was before done, and make it more plain. It cannot control and counteract what had been previously done, unless it is directly and plainly repugnant and contradictory to the former part of the will. The former part of the will gave to Nehemiah an estate tail, in plain and express terms. If the clause in question stood alone, it might seem to give Nehemiah an estate for life, with remainder to his issue, by force of the statute, (Rev. Sts. c. 59, § 9, following *St.* 1791, c. 60, § 3,) controlling the rule in *Shelley's case.* But the clause coming, as it does, after

provisions which clearly give an estate tail to Nehemiah, it cannot control them, because it does not manifest an intent not to give him an estate tail. It may, by implication, indicate an intent, that through the operation of an entailment the grandchildren of the testator shall certainly take, and, for that purpose, that the first taker shall not alienate, and thus bar the entail ; yet this is an intention which the law cannot carry into effect, because it is contrary to its own well established rules.

On the whole, the court are of opinion that the defendant was tenant in tail of the granted and warranted premises ; that they were well and legally conveyed to the plaintiff in fee, by the defendant's deed ; that the defendant's covenants for good title and right to convey have not been broken ; and that judgment must be rendered, on the agreed statement of facts, for the defendant.